AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT

I, Brent Robinson, being first duly sworn, hereby depose and state as follows:

INTRODUCTION AND AGENT BACKGROUND

1. I am a Criminal Investigator (Special Agent) for the United States Forest Service (USFS). I have been a law enforcement officer (LEO) since May of 2005 and a Criminal Investigator since 2010. Before becoming an LEO, I served as a Judge Advocate General in the U.S. Army for eight years. I received a Juris Doctorate Degree and Bachelor of Science Degree in Regional Development from the University of Arizona. I am a graduate of the Natural Resources Police Training Program (2005) and the Criminal Investigator Training Program (2011) at the Federal Law Enforcement Training Center, Glynco, Georgia, where I studied many topics including criminal investigation, surveillance and undercover techniques, Constitutional and criminal law, search and seizure, and other laws and enforcement techniques. My primary responsibility is to investigate violations of federal and state laws within the jurisdiction of the United State Forest Service. I have received formal and on the job training in cyber-crime investigation techniques, computer evidence identification, telephone data recovery and analysis, and computer evidence seizure and processing. In the course of various federal investigations, I have utilized search warrants to cell phone providers, for physical cell phones, for GPS units, for computers, and to various technology companies.

2. The facts set forth in this affidavit are based upon my personal observations, training, experience, and information obtained from witnesses and other law enforcement agents and investigators including those described below. This affidavit is made for the sole purpose of demonstrating probable cause, and it does not purport to set forth all of my knowledge of this investigation.

3. I make this affidavit in support of an application for a search warrant for a Garmin Etrex 20x GPS Unit (hereinafter "Target Device").

4. Based on my training and experience and the facts as set forth in this affidavit, your affiant submits there is probable cause to believe that evidence of violations

of 16 U.S. Code § 470ee and/ or 18 U.S. Code §1361, is contained within the Target Device. There is also probable cause to search the Target Device described in Attachment A for evidence of these crimes to be seized listed in Attachment B.

PROBABLE CAUSE

5. This case involves the unauthorized digging and disturbing of historical items located on lands administered by both the USDA Forest Service and the Gila River Indian Community in the District of Arizona. The investigation concerns possible violations of, inter alia, 16 U.S. Code § 470ee, The Archaeological Resources Protection Act, and/ or 18 U.S. Code §1361, Willful Depredation of United States Property.

1. On or after March 9, 2023, the Dragoon Springs Butterfield Stage Historical Site, a protected 1860's historical site located on the Coronado National Forest (CNF), Arizona, was discovered looted and damaged by what is believed to be a suspect(s) with metal detecting devices. The CNF archaeologists were consulted and did an initial damage assessment which documented over 400 small dug holes in the earth on this 1-acre site. The holes range in depth from a few inches to nearly one foot and with diameters ranging from 1-inch to 12 inches; the pattern, size, number, and spread of these holes in the site appeared to be the work of metal detectorists according to the background, knowledge, education, and experience of the archaeologists. The historical site is the place of the Butterfield Mail stage stop (1858-1861), U.S. Army outpost during the Civil and Indian Wars (1861-1883), and during the era of Old West expansionism and development. The site had been documented to have been the location of gun battles, murders, commerce, and trade amongst the Apache, Mexicans, and Americans. The area abounds in historical metal and non-metal items of interest and value.

6. During investigation of the metal detecting disturbance to the site, your affiant was given a tip that there was an individual posting relevant social media posts on a community Facebook page for metal detecting hobbyist in Arizona ("Metal Detecting ARIZONA"). The publicly accessible posts were made by an individual using the handle "OEL OSONYER." Through checking earlier posts to the same forum, your affiant was able to locate posts where the suspect posted his actual name as "LEO REYNOSO." In a

post from June of 2022, REYNOSO described himself as new to Arizona, very interested in metal detecting, and looking to get out to ghost towns, abandoned mines, and places with some history. Your affiant observed posts dated as early as August 4, 2022, in which REYNOSO stated he had been searching with his medical detector in settlements near Dragoon, AZ.

7.  "OEL OSONYER" additionally posted that he had been near Dragoon and "old stage stops" in March-April 2023, and displayed his "finds" and asked for help in identifying the items. Your affiant viewed these posts and noted numerous artifacts from the time periods previously described associated with the Dragoon Springs Butterfield Stage Site on National Forest lands. These items included shell casings, bullets and other projectiles, military buttons, jewelry, and rank insignia.

8.  Your affiant continued to watch the Facebook groups for additional posts. On December 30, 2023, "OEL OSONYER" posted photos of additional artifact "finds" and referenced that he had found the artifacts at "two different Butterfield Stage Stops, one used by the Army during the Indian Wars." According to the archaeologists that your affiant consulted, the only two Butterfield Stage Stops that were fortified to be used by the U.S. Army were both on federally administered lands - Dragoon Springs and Fort Bowie (Apache Pass), which is a National Park National Historic Site. "OEL OSONYER" posted images of found period coinage (1864) and U.S. Army insignia, and ammunition remnants. "OEL OSONYER" posted again between January 4-27, 2024, that he was back out at a "stage stop" and posted more artifacts of the 1860-1880 era, including an 1835 dime and an 1850 San Francisco trade token.

9.  Your affiant also identified that REYNOSO was a member of a local metal detecting club ("Detectors Unlimited") and had been on metal detecting trips with the then club president, Bob Olender (OLENDER). Your affiant interviewed OLENDER, who stated REYNOSO had mentioned to him that he (REYNOSO) was going to the historical Butterfield Stage Stops to hunt for artifacts. OLENDER further stated that REYNOSO told him that he would metal detect at night, park his vehicle a distance from the sites, and sometimes ride a bike to the sites to avoid detection and identification. OLENDER also

3

said REYNOSO mentioned that he had received a ticket from a local Native American tribal police department for trespassing and using a metal detector on tribal lands. OLENDER said he told REYNOSO that he was being "stupid" and that he had given REYNOSO the metal detecting club bylaws which put him on notice regarding which kinds of activities were illegal. OLENDER also provided the phone number he had for REYNOSO.

10. Your affiant served a §2703d Federal Judicial Order on Meta Platforms, Inc., for subscriber data. Meta Platforms, Inc., returned data for the account referenced above (#1115391392 with user vanity name "leo.reynoso.756"). Account data showed the listed subscriber as "Oel Osonyer" which is the reverse spelling of "Leo Reynoso". It also listed the registered email address and phone number associated with the Facebook account.

11. Your affiant served a §2703d Federal Judicial Order on ATT Mobility for subscriber information for the above-mentioned cellular number affiliated with REYNOSO, followed by a federal search warrant for telephone location data on REYNOSO's phone. The request was tailored to cover only about 83 days of the past 2 years, which were identified in previously obtained data as dates when REYNOSO was most probably actively hunting artifacts with his metal detector on public or tribal lands. The data which ATT Mobility returned was limited to a 1-year retention period and the data returned was from about June 2023-July 2024, thus any locations before June 2023 or after July 2024 where not identified in the search warrant return.

12. Your affiant received GPS cellular phone location data information from the ATT Mobility search warrant which documented REYNOSO'S location at Butterfield Stage locations on the Gila River Indian Community tribal lands, as well as other historic locations (ferry sites, abandoned stores, and ruined settlements) on tribal lands. This data showed that the cellular telephone used by REYNOSO left his residence and travelled to remote locations closed to the public on the Gila River Indian Community where historic sites dating to 1850's – 1880's are located. From the data provided by ATT Mobility, it appears that REYNOSO lingered at these locations from 2-5 hours.

13. On September 27, 2024, USDA Forest Service law enforcement agents and the Gila River Police Department worked jointly to execute a federal search warrant on REYNOSO's residence and vehicles. The Target Device was located on the computer desk in REYNOSO's residence and was lawfully seized pursuant to the search warrant. A printed map from the Target Device was also seized and it contained a depiction of the walking route REYNOSO took while on the Gila River Indian Community and it was labeled with locations and artifacts that REYNOSO found. Many of these listed artifacts were recovered during the search of the home as well.

14. REYNOSO admitted during consensual, non-custodial questioning that since the Target Device had been seized, he would not lie about his actions and the locations he had been since law enforcement now had proof where he went.

15. The Target Device has been stored in evidence since its seizure during the search warrant of REYNOSO's residence. Your affiant submits there is probable cause to believe that the Target Device contains additional evidence of the locations of REYNOSO's illegal digging and illegal removal of artifacts.

16. The Global Positioning System (GPS) is a U.S. owned utility that provides users with positioning, navigation, and timing (PNT) services. This system consists of three segments: the space segment, the control segment, and the user segment. The user segment allows users to utilize devices to safely traverse land with the confidence of knowing precisely where they are at all times, as well as how to return to their starting point. GPS units will also provide velocity of movement data and the precise date and time at the locations. One of the benefits is the ability to record and return to waypoints. An advantage in newer GPS receivers is the capability to transfer data to and from a computer.

17. I know through my training and experience that GPS handheld devices, such as the Target Device, are used to mark locations (waypoints) of historical sites by looters. Looters will also mark the locations of specific items found and use the device to label the place. These saved locations will contain latitude and longitude readings, along with an accuracy measurement (plus or minus "X number" of feet), which will accurately place the possessor of the GPS at that location. GPS units will also mark paths or routes by saving

"bread crumb" locations over the period of time period that the device is on and obtaining global positioning data from GPS satellites. These devices will also provide movement velocity and document the precise date and time at the locations documented. These saved locations, labels, date/time, and routes are saved in the built-in resident memory of the GPS device and can be viewed by accessing the saved files and/or downloading the data to computers with installed Garmin GPS software and then printing out paper maps like the one found and seized during the execution of the search warrant on REYNOSO'S residence.

18. Based upon my research of Target Device, it can retain a variety of data, which then can be retrieved, including:

    a) Location: can store and display your location.

    b) Terrain: can store and display the terrain of a location.

    c) Difficulty: can store and display the difficulty of a location.

    d) Hints and descriptions: can store and display hints and descriptions of a location.

    e) Track logs: can record track logs, including the distance traveled, the time spent moving, and the rate of ascent or descent.

    f) Waypoints: can store and display waypoints, which can mark locations you are, are going, or have been. You can add details to waypoints, such as name, elevation, and depth.

    g) Data fields: can display data fields while navigating, such as the direction to get back on route, the distance traveled, and the elevation distance to your destination.

19. 31. The Target Device has the following user data that can be recovered within the storage limitations:

    a) 2,000 GPX files

    b) 2,000 waypoints

    c) 5,000 geocaches

    d) 200 routes, 250 points per route

   e)  200 saved tracks

   f)  2,000 archive tracks

   g)  10,000 points per track

   h)  100 custom map tiles

 20. The search methodology that may be employed in searching the electronic device, depending on the nature off the device and its operating systems, is described as follows:

   a. The device described in the warrant, device hardware, processing systems, and any form of electronic storage that could contain evidence described in the proposed warrant, need to be seized for a search for evidence as described above (Depending on the nature of the hardware, software, and/or processing system(s) used by the device, such searches may be conducted offsite.) It is anticipated that mirror copies or images of such evidence may be made – if possible and/or feasible – if the failure to do so could otherwise potentially alter the original evidence.

   b. Contextual information necessary to understand the evidence, to identify the user/possessor of the device, to understand the operating and processing systems, and to establish admissibility of the evidence in subsequent legal proceedings will also be sought in the search.

   c. Additional techniques to be employed in analyzing the seized item may include (i) surveying various file directories and the individual files they contain; (ii) opening files to determine their contents; (ii) scanning storage areas, (iv) performing key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are likely to appear in the evidence described in this affidavit and its attachments, and (v) performing any other data analysis techniques that may be necessary to locate and retrieve the evidence described in this affidavit and its attachments.

## CONCLUSION

21.     Based on the foregoing, your affiant submits that there is probable cause to believe that the previously seized Target Device will contain evidence described in Attachment B in support of an investigation related to the crimes of 16 U.S.C. § 470ee and/or 18 U.S.C. § 1361. The examination of the Target Device may require authorities to employ techniques, including but not limited to, computer-assisted scans of the entire medium that might expose many parts of the devices to human inspection to determine whether it is evidence described by the warrant.

22.     Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, your affiant submits there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

I swear, under penalty of perjury, that the foregoing is true and correct.

*Brent Robinson*

Brent Robinson, Special Agent
United States Forest Service

Sworn and subscribed to before me telephonically this 28th day of October, 2024.

*Lynnette C. Kimmins*

Lynnette C. Kimmins
United States Magistrate Judge

8